**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**JAMIL RAHIM,**

      **Petitioner,**

      **v.**                                                      **Civil Action No. 14-1262 (JEB)**

**U.S. PAROLE COMMISSION,**

      **Respondent.**

---

**MEMORANDUM OPINION**

While incarcerated for violating the conditions of his supervised release, Jamil Rahim

filed this *pro se* Petition for a Writ of Habeas Corpus.  The potpourri of challenges he raises may

be grouped into two distinct categories.  First, he questions the authority of the United States

Parole Commission to revoke his supervised release and denounces the procedures employed by

the Commission in deeming him in violation.  Second, he attacks his original sentencing,

pointing to alleged defects in the trial court's colloquy and his counsel's representation.  Finding

some of Rahim's challenges unconvincing and lacking jurisdiction to consider the others, the

Court will deny the Petition.

**I.       Background**

On March 12, 2008, Petitioner was sentenced in D.C. Superior Court Case No. 2006-

CF2-3222 to 30 months' imprisonment, followed by a five-year term of supervised release, for

attempted distribution of cocaine.  See Opp., Exh. 1 (BOP Sentence Monitoring Computation

Data) at 9-10.  On that same day, he was sentenced in D.C. Superior Court Case No. 2007-CF2-

109 to a consecutive 14-month term of imprisonment, followed by a two-year term of supervised

release, for carrying a pistol without a license and unlawful possession of a firearm.  See id. at

11. Rahim was released from prison on April 2, 2010, to begin his aggregate five-year term of supervised release. See id. at 13-15; Opp., Exh. 2 (Warrant Application) at 1.

Nearly four years later, on March 6, 2014, the United States Parole Commission issued a warrant for Petitioner's arrest, charging him with violating the terms of his release by failing to both submit to drug testing and to report to his supervising officer as directed. See Warrant App. at 1-2. Rahim was arrested three weeks later, on March 28. See Opp., Exh. 3 (Short Intervention for Success Worksheet) at 2.

In lieu of a revocation hearing, Rahim applied to participate in the Commission's Short Intervention for Success ("SIS") Program. See Def. Supp. Exh. 1 (SIS Application). SIS is a pilot program aimed at "drug intervention over re-incarceration for drug-related violations of supervised release." Jenkins v. United States, No. 14-660, 2014 WL 5784084, at *1 (D.D.C. Nov. 5, 2014). To qualify for the program, a releasee must admit to the alleged violations and waive certain rights. See id. In exchange, the Commission agrees to impose a sentence of no more than eight months of incarceration, in addition to a new period of supervised release within the maximum authorized term for the underlying offense. See id.

In his SIS application, accordingly, Rahim "accept[ed] responsibility for the violations of supervision alleged against [him]" and "agree[d] to waive [his] revocation hearing." SIS App. at 2. He further indicated his understanding that if the Commission approved his application, it would issue a Notice of Action setting forth a new sentence within the agreed-upon parameters. See id. at 3. As a prerequisite of participating in SIS, Petitioner waived the right to appeal any such determination. See id. He could, however, request that the Commission "amend its decision" should he believe that it (1) "erred in determining [his] release date"; (2) "included

special conditions of supervised release that are not supported by [his] background"; or (3) "erred in applying the rules regarding forfeiture of time on parole."  Id.

Following an SIS hearing, the Commission approved his application and imposed a three-month term of imprisonment, to be followed by a 57-month term of supervised release.  See SIS Worksheet at 3-4.  On June 23, 2014, four days prior to the expiration of his prison term, Rahim filed this Petition seeking habeas relief.  He has since been released to his term of supervision and, according to the Court Services and Offender Supervision Agency, now resides in the District of Columbia.  See Opp. at 3; id., Exh. 5 (Certificate of Supervised Release).

## II.    Analysis

District of Columbia prisoners, like any others, are entitled to habeas relief if they establish that their "custody [is] in violation of the Constitution or laws or treaties of the United States . . . ."  28 U.S.C. § 2241(c)(3).  While Rahim is no longer physically confined, this does not itself defeat his Petition; he is deemed "in custody" so long as he remains on supervised release.  See Banks v. Gonzales, 496 F. Supp. 2d 146, 149 (D.D.C. 2007); see also Jones v. Cunningham, 371 U.S. 236, 243 (1963) (holding that a parolee is considered in "'custody' . . . within the meaning of the habeas corpus statute"); Taylor v. U.S. Parole Comm'n, 860 F. Supp. 2d 13, 15 (D.D.C. 2012) ("Supervised release is considered the functional equivalent of parole.").

Petitioner's attack on his current supervisory status is two-pronged.  He raises procedural and jurisdictional objections to the Parole Commission's revocation of his supervised release, and he claims error by both the trial court and his trial counsel in connection with the original 2008 sentencing.  The Court considers each category in turn.

A.  <u>Commission Revocation Proceedings</u>

Rahim marshals a bevy of challenges to the Commission's revocation of his term of supervised release.  Although his Petition is somewhat difficult to parse, he seemingly contends that: (1) the Commission lacks the general authority to modify or revoke supervised-release status; (2) the violation warrant issued by the Commission lacked probable cause; (3) the newly imposed supervised-release term of 57 months is impermissibly excessive; and (4) the Commission unlawfully deprived him of a full and fair revocation hearing.  <u>See</u> Pet. at 5-6.  He also vaguely alludes to a violation of the Ex Post Facto Clause.  <u>See</u> <u>id.</u> at 5.  Consideration of the merits of most of Rahim's claims is precluded, however, by his own waiver.

As a condition of participating in SIS, Petitioner affirmatively surrendered several opportunities to challenge the Commission's authority and procedures.  Although he now criticizes the lack of revocation hearing, he explicitly waived his right to such a hearing in his SIS application.  <u>See</u> SIS App. at 2 ("I . . . accept responsibility for the violations of supervision alleged against me and agree to waive my revocation hearing.").  Had he not opted to forgo that opportunity, Rahim could have raised the objections he now seeks to bring before this Court. <u>See</u> <u>Johnson v. United States</u>, 2009 WL 2740683, at *2 (M.D.N.C. 2009) ("[A] parole revocation is a parolee's opportunity to have his claims heard by the Parole Commission.").  In similar fashion, he expressly waived his right to challenge the Commission's ultimate revocation determination through an appeal to the National Appeals Board.  <u>See</u> SIS App. at 3; 28 C.F.R. §§ 2.105(g); 2.26.

Nor were these waivers for naught.  Petitioner deliberately opted to relinquish these opportunities to bring his claims in exchange for the benefits that attend participation in SIS.  In other words, he received precisely what he bargained for: the Commission sentenced him to less than eight months of imprisonment and a term of supervised release within the maximum

authorized for his underlying offense of conviction.  See D.C. Code §§ 48-904.01(a)(2)(A)

(prescribing thirty-year statutory maximum for attempted distribution of cocaine); 24-

403.01(b)(2)(A) (authorizing five-year term of supervised release where "maximum term of

imprisonment authorized for the offense is 25 years or more").  Rahim cannot circumvent the

bargain he struck by now seeking habeas relief.  See Johnson, 2009 WL 2740683, at *2 (holding

that parolee's waiver of revocation hearing precluded habeas review of his claims); Jenkins,

2014 WL 5784084, at *2 ("[Petitioner] may not sidestep his waiver of the right to appeal the

merits of the Parole Commission's decision by bringing this habeas action instead.").

    Even if he had not expressly waived his right to assert these claims, Petitioner would still

be out of luck.  This is because an individual must have exhausted administrative remedies

before this Court may entertain a habeas petition challenging the actions of the Commission.  See

Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) ("A prisoner challenging a Parole Commission

decision is required to exhaust his administrative remedies before seeking habeas relief.");

Jenkins, 2014 WL 5784084, at *2 (stating that failure to exhaust administrative remedies

"precludes bringing a habeas petition to challenge the Parole Commission's decision"); King v.

Hasty, 154 F. Supp. 2d 396, 400 (E.D.N.Y. 2001) ("A petitioner must exhaust all available

administrative remedies before filing a petition for habeas corpus relief, including in the parole

context.").  Requiring such exhaustion aids the judiciary, as it: (1) permits a complete factual

record to be developed; (2) affords the agency an opportunity to correct its own errors; and (3)

"conserves the court's time by foreclosing the possibility that the relief applied for may be

granted at the administrative level." Cruz v. Clark, 684 F. Supp. 1335, 1337 (E.D. Va. 1988)

(citing Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984)).  In light of

Rahim's uncontested failure to seek recourse through administrative channels, the majority of his claims against the Commission are barred as a matter of exhaustion in addition to waiver.

Yet Rahim's first challenge – to the Commission's authority in connection with supervised release – is arguably sufficiently fundamental to the revocation proceedings that it cannot be waived or held to the requirements of exhaustion.  The Court will thus treat with it on the merits.  In the course of abolishing the former D.C. Board of Parole, the 1997 D.C. Revitalization Act bestowed upon the U.S. Parole Commission supervisory authority over all D.C. Code felony offenders who committed their crimes after August 5, 2000.  See National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, 111 Stat. 712, 745; D.C. Code § 24-133(c)(2) (providing that supervised releasees are "subject to the authority of the United States Parole Commission until completion of the term of supervised release"); id. § 24-403.01(b)(6) ("Offenders on supervised release shall be subject to the authority of the United States Parole Commission until completion of the term of supervised release."); Foster v. Wainwright, 820 F. Supp. 2d 36, 38-39 (D.D.C. 2011).  The authority vested in the Commission by the Act includes "the authority both to revoke supervised release and return a releasee to custody, as well as to impose a new term of supervised release following his release from custody."  Taylor, 860 F. Supp. 2d at 16; see also 28 C.F.R. § 2.218(b).  The Commission's assertion of jurisdiction over Rahim – who committed his crimes in 2006 and 2007 – was, therefore, plainly proper as a statutory matter.

Rahim alleges, however, that the delegation of such authority to the Commission infringes on separation of powers and allows the Commission to act "in the capacity of an Article III Judge."  Pet. at 4-5.  This claim is a non-starter.  The Commission possesses no authority to impose a prison sentence upon conviction of a crime; that authority rests solely with the Superior

Court of the District of Columbia.  See D.C. Code § 11–923(b)(1) (granting jurisdiction to Superior Court over any criminal case under District of Columbia law).  Its jurisdiction instead extends only to the execution of a judicially imposed sentence – that is, to determinations pertaining to parole and supervised release.  See Smallwood v. U.S. Parole Comm'n, 777 F. Supp. 2d 148, 150 (D.D.C. 2011).  Such proceedings are not part of a criminal prosecution, but rather entirely separate administrative matters "at which the parolee does not possess the same rights as a criminal defendant at trial."  See id. (citing Morrissey v. Brewer, 408 U.S. 471, 480 (1972), and quoting Maddox v. Elzie, 238 F.3d 437, 445 (D.C. Cir. 2001)).  District courts in this Circuit have, accordingly, unanimously recognized that the Commission's exercise of its supervisory authority does not usurp the judicial function or offend the doctrine of separation of powers.  See Morrison v. U.S. Parole Comm'n, No. 13-1643, 2014 WL 4678566, at *2 (D.D.C. Sept. 18, 2014); Taylor, 860 F. Supp. 2d at 16; Smallwood, 777 F. Supp. 2d at 150 (collecting cases).  Rahim presents no grounds for departure from this consensus.

   B.  Original Sentence

   Petitioner's second set of claims relates back to the 2008 Superior Court proceedings in which he was sentenced for his underlying offenses.  According to Rahim, both of his sentencing judges "impermissibly . . . delegated" authority over his term of supervised release to the Commission, without his knowledge and without explaining the "nature and consequences" of supervised release.  See Pet. at 5.  He further asserts that his defense counsel was ineffective for failing to object to this purported delegation of authority.  See id. at 6.  Ordinarily, a prisoner in custody pursuant to the judgment of a State court may challenge the legality of his conviction and sentence in federal court under 28 U.S.C. § 2254.  In this case, however, the Court lacks jurisdiction to entertain such a petition.

Under D.C. Code § 23-110(a), "[a] prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that . . . the sentence is . . . subject to collateral attack, may move the court to vacate, set aside, or correct the sentence."  A federal court cannot entertain such a petition "if it appears that the applicant has failed to make a motion for relief under this section . . . unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."  Id. § 23-110(g).  In other words, "a District of Columbia prisoner seeking to collaterally attack his sentence must do so by motion in the sentencing court – the Superior Court – pursuant to D.C. Code § 23-110."  Byrd v. Henderson, 119 F.3d 34, 36 (D.C. Cir. 1997) (emphasis added).  "[W]hen Congress enacted section 23-110 . . ., it sought to vest the Superior Court with exclusive jurisdiction over most collateral challenges by prisoners sentenced in that court."  Williams v. Martinez, 586 F.3d 995, 1000 (D.C. Cir. 2009); see also Swain v. Pressley, 430 U.S. 372, 377-78 (1977) (finding parallel between changes introduced to federal habeas process by 28 U.S.C. § 2255 and new post-conviction procedure envisaged by Congress when it enacted § 23-110).  The only way Rahim could bring his Petition in this Court is if he could show that § 23-110 were somehow "'inadequate or ineffective to test the legality of his detention.'"  Garris v. Lindsay, 794 F.2d 722, 726 (D.C. Cir. 1986).

Petitioner has not even attempted to make that showing.  Both types of claims he brings here – i.e., that the trial court's sentencing colloquy was insufficient and that his trial counsel was ineffective – are routinely brought pursuant to § 23-110.  See, e.g., Bradley v. United States, 881 A.2d 640, 647 (D.C. 2005) (affirming denial of § 23-110 motion alleging court error during plea proceeding and ineffective assistance of trial counsel); Wu v. United States, 798 A.2d 1083, 1091-92 (D.C. 2002) (affirming denial of § 23-110 motion alleging error by trial court in

imposing consecutive sentences and ineffective assistance of trial counsel); <u>Blair v. United States</u>, 791 A.2d 52, 53 (D.C. 2002) (affirming denial of § 23-110 motion alleging illegal sentencing by trial court and ineffective assistance of counsel).  A challenge under that section is, therefore, not "inadequate or ineffective to test the legality" of his conviction.  <u>See</u> <u>Whoie v. Warden, Butner Fed. Med. Ctr.</u>, 891 F. Supp. 2d 2, 3 (D.D.C. 2012); <u>Garris</u>, 794 F.2d at 727 ("It is the inefficacy of the remedy, not a personal inability to utilize it, that is determinative" of whether the § 23-110 process is "inadequate or ineffective.").

Because Rahim did not avail himself of this remedy, and because he has failed to show that it is inadequate to address his objections to his original sentencing, this Court lacks jurisdiction to consider the merits of those claims.  <u>See</u> <u>Martinez</u>, 586 F.3d at 998 (Section 23-110(g) "divests federal courts of jurisdiction to hear habeas petitions by prisoners who could have raised viable claims pursuant to § 23-110(a).").  These challenges, therefore, fail as well.

## III.   Conclusion

For the reasons articulated herein, the Court will deny the Petition.  An Order consistent with this Opinion shall issue this day.

<u>/s/</u> <u>James E. Boasberg</u><br>JAMES E. BOASBERG<br>United States District Judge

Date:  <u>January 7, 2015</u>